IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


FILED
FEB - 1 2022
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 3:22-cr-009 |
| | ) | |
| | ) | Conspiracy to Commit Wire Fraud |
| v. | ) | 18 U.S.C. § 1349 |
| | ) | (Count 1) |
| | ) | |
| KIESHA LASHAWN POPE | ) | Wire Fraud |
| | ) | 18 U.S.C. § 1343 |
| | ) | (Counts 2-4) |
| | ) | |
| | ) | Aggravated Identity Theft |
| | ) | 18 U.S.C. § 1028A(a)(1) |
| Defendant. | ) | (Count 5) |
| | ) | |
| | ) | Criminal Forfeiture Allegation |
| | ) | 18 U.S.C. § 981 |

## INDICTMENT

February 2022 Term - At Richmond, Virginia

THE GRAND JURY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

#### Defendant and Co-Conspirators

1.  From on or about April 10, 2006, and continuing through on or about October 3, 2017, KIESHA LASHAWN POPE was the Director of Financial Aid at J. Sargent Reynolds Community College ("JSRCC"), a post-secondary, public community college servicing the greater Richmond, Virginia area, within the Eastern District of Virginia. As the director, POPE managed a staff in the financial aid office responsible for dispersing federal funds provided to eligible enrolled students under the authority of Title IV of the Higher Education Act of 1965, as

amended (hereinafter "Title IV Aid") as well as financial aid programs administered and funded by the Commonwealth of Virginia (hereinafter, "Virginia Aid") to eligible enrolled students.

2. Co-conspirator ("CC") 1 is POPE's son. CC-1 received approximately $92,138 in Title IV Aid and approximately $39,751 in Virginia Aid, over the time periods of in or about 2011, continuing through in or about 2017, while purportedly attending JSRCC.

3. CC-2 is POPE's goddaughter. CC-2 received approximately $48,329 in Title IV Aid and approximately $29,294 in Virginia Aid, over the time periods of in or about 2010, continuing through in or about 2017, while purportedly attending JSRCC.

4. CC-3 is POPE's ex-fiancé. CC-3 received approximately $62,791 in Title IV Aid and approximately $28,011 in Virginia Aid, over the time periods of in or about 2010, continuing through in or about 2015, while purportedly attending JSRCC.

5. CC-4 is POPE's cousin. CC-4 received approximately $43,192 in Title IV Aid and approximately $36,096 in Virginia Aid, over the time periods of in or about 2012, continuing through in or about 2018, while purportedly attending JSRCC.

### Financial Aid Background

6. The Department of Education ("DOE"), an agency of the United States Government, provided oversight and administration of Title IV Aid.

7. Title IV Aid programs administered and funded by the DOE that were used by CC-1, CC-2, CC-3, and CC-4 included: 1) Pell Grants, need-based grants to undergraduate students in eligible curriculums; 2) Federal Supplemental Educational Opportunity Grants, need-based grants to undergraduate students; 3) William D. Ford Federal Direct Stafford Loans, need-based subsidized and unsubsidized loans to students made based on financial need; and 4) Federal Work Study Program, subsidized jobs to students with financial need.

8. Virginia Aid programs administered and funded by the Commonwealth of Virginia that were used by CC-1, CC-2, CC-3, and CC-4 included: 1) Part-Time Tuition Assistance Program, need-based grants to undergraduate Virginia residents; 2) Virginia Community College System grants, need-based grants to Virginia residents at Virginia's community colleges; 3) JSR Tuition Assistance, need-based financial assistance to JSRCC students; 4) College Scholarship Assistance Program, a need-based financial grant to undergraduate students in extreme financial hardship; and 5) Commonwealth Award Program, need-based grants to eligible Virginia undergraduate students.

9. In order to obtain any of the aforementioned Title IV Aid and Virginia Aid (collectively, "Student Aid"), federal and state regulations required CC-1, CC-2, CC-3, and CC-4 to complete a Free Application for Federal Student Aid ("FAFSA"). The FAFSA requires students to certify that: 1) the information being supplied is true and correct; 2) any student financial aid funds received will be used for authorized educational expenses only, which include tuition, fees, supplies, housing, and subsistence; and 3) the student will maintain satisfactory academic progress once in school; and 4) that the student is enrolled or accepted for enrollment as a regular student working towards a degree or certificate in an eligible program. The FAFSA contains written notice that a false statement or misrepresentation on the application is punishable as a crime.

10. To be eligible for Student Aid, CC-1, CC-2, CC-3, and CC-4 were required to complete FAFSA applications annually; such applications were electronically processed by the DOE's Central Processing System ("CPS"). The CPS performed data verification with various other federal agencies to confirm the student's eligibility for aid, calculating the degree of the student's financial need based on the information the student submitted. The CPS then

electronically sent a record of the student's financial aid eligibility to JSRCC, the post-secondary institutions designated by CC-1, CC-2, CC-3, and CC-4. The DOE and the post-secondary institutions relied upon the information from the FAFSA forms to determine whether such students were eligible to receive Student Aid and the amounts of aid to which they were entitled.

11. To ensure Student Aid was used only for educational purposes, the funds were sent from the DOE (and associated lenders) as well as the Commonwealth of Virginia directly to JSRCC, where CC-1, CC-2, CC-3, and CC-4 were supposed to be enrolled. The JSRCC financial aid office was responsible for applying those funds to student accounts to cover tuition, fees, and other educationally related charges incurred at the institution. When the total amount of Title IV Aid and Virginia Aid credited to the student's account exceeded JRSCC charges, the JSRCC financial aid office would disburse the remaining credit balance (sometimes referred to as a "refund disbursement") to the student within a specified time period. Refund disbursements would often take the form of a physical check, direct deposit wiring to a student's bank account, and a prepaid card mailed to the student's address.

### *Satisfactory Academic Performance is Required for Continued Student Aid*

12. Section 484(a)(2) of the Higher Education Act of 1965 requires a student to be making Satisfactory Academic Progress ("SAP") to be eligible for any Title IV Aid. SAP is defined as having a cumulative C grade point average or academic standing consistent with school requirements for graduation.

13. When a JSRCC student failed to satisfy the SAP requirements, the student could regain eligibility for Title IV Aid only if: 1) the student achieved academic standing in any grading period consistent with the requirements for graduation; or 2) the student filed for a SAP appeal with the JSRCC financial aid office. The JSRCC financial aid office could approve a

SAP appeal and reinstate financial aid based on "undue hardship" to the student, to include: 1) death of a relative of the student; 2) personal injury or illness of the student; or 3) special circumstances as determined by the institution.

### *Title IV Code of Conduct*

14. Colleges participating in Title IV loan programs, including JSRCC, are required by the DOE to enforce a code of conduct on all employees. POPE, as a JSRCC employee, was subject to the Virginia Community College System – Title IV Code of Conduct, which as of at least 2015 included the following language:

> BAN ON NEPOTISM: Employees of the Financial Aid Office will not award aid to themselves or members of their immediate family. In order to avoid the appearance of a conflict, this task shall be reserved for that employee's supervisor or other designee. Information provided to aid applicants is accurate, unbiased, and does not reflect a preference arising out of actual or potential personal gain. Aid administrators will disclose to the institution any involvement, interest in, or potential conflicts of interest with any entity doing business with the institution.

15. At no point did POPE recuse herself from aid decisions involving her immediate family members, including her son, CC-1. Nor did POPE disclose to the institution any conflicts of interest arising from her involvements with aid decisions regarding CC-1, CC-2, CC-3, or CC-4.

### **The Scheme and Artifice to Defraud**

16. Beginning at a time unknown, but no later than in or about 2010, and continuing through in or about March 2021, in Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, defendant POPE and others known and unknown to the Grand Jury, did knowingly, unlawfully, and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent

pretenses and promises through the transmission of signs, signals, and writings in interstate commerce.

## Purpose of the Scheme and Artifice to Defraud

17. The purpose of the scheme was for POPE and co-conspirators, known and unknown to the Grand Jury, to unlawfully enrich themselves: 1) by fraudulently causing the U.S. Government, the Commonwealth of Virginia, and JSRCC to award Student Aid to co-conspirators who were not entitled to such Student Aid; 2) by manipulating JSRCC financial aid to improperly increase the financial aid eligibility of and disbursements to co-conspirators; 3) by concealing failures of the co-conspirators to make satisfactory academic performance and concealing the lack of eligibility of such co-conspirators to continue to receive Student Aid; 4) by spending Student Aid on improper non-educational expenses for which Student Aid was not authorized; and 5) by concealing POPE's and the co-conspirators' improper use of Student Aid from the United States Government, the Commonwealth of Virginia, JSRCC personnel, and law enforcement officials.

## The Manner and Means of the Scheme and Artifice to Defraud

18. The manner and means of the scheme and artifice to defraud included, but were not limited to, the following:

19. POPE agreed to procure Student Aid for co-conspirators and to ensure their continued Student Aid eligibility at JSRCC, even when POPE knew that such co-conspirators were not eligible for continued Student Aid. In exchange, the co-conspirators paid a portion of the JSRCC refund disbursement, consisting of Title IV Aid and Virginia Aid, to POPE.

20. POPE completed FAFSAs annually on behalf of her co-conspirators and instructed the same individuals to complete such FAFSAs annually on their own behalf. Such

FAFSAs contained misrepresentations and false statements, including certifications that all Title IV Aid received will be used for authorized educational expenses of the co-conspirator, which included tuition, fees, supplies, housing, and subsistence.

21. POPE and the co-conspirators' FAFSA submittals would cause JSRCC to issue refund disbursements, consisting of Title IV Aid and Virginia Aid, to co-conspirators.

22. POPE used her access to JSRCC financial aid systems to maintain and inflate Student Aid eligibility for co-conspirators. POPE procured continued eligibility for co-conspirators, notwithstanding the failures of such students to submit SAP appeals, even in semesters when such individuals did not attend any classes and would not have otherwise been eligible for the Student Aid they received.

23. POPE caused wirings in interstate commerce to and from the Eastern District of Virginia in submitting FAFSAs for CC-1, CC-2, CC-3, and CC-4 and in procuring JSRCC refund disbursements for the same individuals.

24. POPE received a portion of the JSRCC refund disbursements from her co-conspirators via a variety of means, including, but not limited to: 1) directing CC-3 and CC-4 to cash JSRCC refund disbursement checks in their names and to remit a portion to POPE; 2) directing CC-2 to initiate PayPal payments to POPE upon receipt of JSRCC refund disbursements; and 3) spending the refund disbursement prepaid card issued in the name of CC-1 on POPE's personal expenses directly. In most instances, POPE received roughly half of the total amount of the JSRCC refund disbursement.

25. POPE spent the Student Aid money provided to co-conspirators on various personal expenses, including repairs for her personal vehicle, retail shopping, and expenses for her minor-aged daughter, J.P.

## **Conduct in Furtherance of the Scheme and Artifice to Defraud**

### *CC-1*

26. CC-1 had an agreement with POPE that POPE would continue to enrol CC-1 at JSRCC, and once CC-1 received refund disbursements, CC-1 would cash them and give POPE roughly half the money.

27. Between 2011 and 2017, CC-1 never completed a FAFSA form directly, but rather submitted his personal information to POPE, who filed the FAFSA on CC-1's behalf; upon every FAFSA submittal, POPE signed a representation on CC-1's behalf that Title IV Aid received would be used only for authorized education expenses of CC-1.

28. CC-1 received approximately $117,708 in refund disbursements from JSRCC, consisting of Title IV and Virginia Aid, on or about September 22, 2011, through on or about October 27, 2017. From approximately 2011 through approximately 2017, CC-1 did not attend any classes at JSRCC. On or about September 22, 2011, continuing through on or about September 26, 2014, CC-1 received refund disbursements in the form of paper checks, which were predominantly cashed at Walmart Stores. From on or about February 17, 2015, and continuing through on or about October 27, 2017, CC-1 received $65,193.23 in refund disbursements deposited onto a prepaid card sent directly to POPE's home address.

29. CC-1 was automatically placed on a financial aid suspension after the Spring 2013 term due to a failure to meet SAP requirements. Even though CC-1 did not attend any classes between 2011 and 2013, and CC-1 did not submit a SAP appeal after the Spring 2013 term, POPE improperly placed CC-1 on SAP probationary status. As a result, CC-1 continued to receive JSRCC financial aid from in or about 2014 through 2017. Moreover, on numerous

occasions during this time period, POPE made manual entries into the JSRCC financial aid system to inflate CC-1's financial aid disbursement amounts.

30. On or about October 3, 2017, POPE's supervisor at JSRCC, T.H., confronted POPE about financial aid amounts disbursed to CC-1, asking directly whether POPE had any relation with that student. POPE falsely stated that she had no relation to CC-1. In truth, CC-1 is POPE's son.

### *CC-2*

31. Between in or about 2013, and continuing through in or about 2017, POPE began asking CC-2 for a portion of the JSRCC refund disbursements. It was part of the scheme and artifice to defraud that POPE informed CC-2 when JSRCC refund disbursements had been sent by JSRCC and instructed CC-2 to send a portion of the refund disbursements back to POPE.

32. CC-2 never completed a FAFSA form directly, but rather submitted her personal information to POPE, who filed the FAFSA on CC-2's behalf. Upon every FAFSA submittal, POPE signed a representation on CC-2's behalf that Title IV Aid received would be used only for authorized education expenses of CC-2.

33. CC-2 received approximately $43,525 in refund disbursements from JSRCC, consisting of Title IV and Virginia Aid, on or about June 14, 2011, continuing through on or about August 7, 2017. On or about June 14, 2011, continuing through on or about September 26, 2014, CC-2 received JSRCC refund disbursements in the form of paper checks, which CC-2 deposited into Checking and Savings accounts. On or about October 7, 2015, continuing through on or about November 2, 2015, CC-2 received JSRCC refund disbursements deposited onto a prepaid card. On or about September 22, 2016, continuing through on or about August 7, 2017,

CC-2 received $15,427.73 in JSRCC refund disbursements as direct deposits to a Bank of America account ending in *4801.

34. CC-2 was automatically placed on a financial aid suspension after the Spring 2015 term due to a failure to meet SAP requirements. POPE improperly placed CC-2 on SAP probationary status. As a result, CC-2 continued to receive JSRCC financial aid for the following terms: Fall 2015, Fall 2016, and Spring 2017. There was no SAP appeal on file for Fall 2015, but CC-2 nevertheless received aid for this period. Moreover, on numerous occasions during this time period, POPE made manual entries into the JSRCC financial aid system to inflate CC-2's financial aid disbursement amounts.

35. Around the time of CC-2's receipt of refund disbursements, CC-2 made payments to POPE at POPE's direction, including but not limited to the transactions shown below:

| Approximate Date | Description |
| --- | --- |
| September 22, 2016 | JSRCC wired $1,399.93 to CC-2's Bank of America account ending in *4801 for Student Aid refund disbursements. |
| September 23, 2016 | JSRCC wired $1,000.00 to CC-2's Bank of America account ending in *4801 for Student Aid refund disbursements. |
| September 23, 2016 | CC-2 wired $1,000 to POPE's PayPal account. |
| September 26, 2016 | CC-2 wired $400 to POPE's PayPal account. |
| September 28, 2016 | JSRCC wired $1,454.00 to CC-2's Bank of America account ending in *4801 for Student Aid refund disbursements. |
| December 5, 2016 | JSRCC wired $2,000 to CC-2's Bank of America account ending in *4801 for Student Aid refund disbursements. |
| December 6, 2016 | CC-2 wired $1,000 to POPE's PayPal account. |
| February 13, 2017 | JSRCC wired $2,239.90 to CC-2's Bank of America account ending in *4801 for Student Aid refund disbursements. |
| February 14, 2017 | CC-2 wired $1,000 to POPE's PayPal account. |
| February 15, 2017 | JSRCC wired $1,853.10 to CC-2's Bank of America account ending in *4801 for Student Aid refund disbursements. |
| February 16, 2017 | CC-2 wired $1,046.50 to POPE's PayPal account. |
| March 21, 2017 | JSRCC wired $500 to CC-2's Bank of America account ending in *4801 for Student Aid refund disbursements. |
| March 23, 2017 | CC-2 wired $500 to POPE's PayPal account. |

| Approximate Date | Description |
|---|---|
| March 28, 2017 | JSRCC wired $500 to CC-2's Bank of America account ending in *4801 for Student Aid refund disbursements. |
| June 20, 2017 | JSRCC wired $1,526.80 to CC-2's Bank of America account ending in *4801 for Student Aid refund disbursements. |
| June 21, 2017 | CC-2 wired $1,500 to POPE's PayPal account. |
| August 7, 2017 | JSRCC wired $1,500 to CC-2's Bank of America account ending in *4801 for Student Aid refund disbursements. |
| August 8, 2017 | CC-2 wired $900 to POPE's PayPal account. |

*POPE Forged SAP Appeals for CC-2*

36. In an email exchange on August 18, 2017, D.L. from JSRCC's central business office inquired of POPE's subordinate in the financial aid office "how in the world [CC-2] qualif[ied] for the amount of aid she received the last 3 semesters while only enrolling in 3-6 credits." POPE replied via email that the "student has been dealing with a serious illness and that is why her first appeal was approved." D.L. again told POPE that CC-2's profile reflected "a really odd combination of financial aid amounts, SAP warnings and failures, low enrollment credits and her very low grade point average." POPE replied the same day that the student did a "special circumstance appeal to request additional aid due to her extremely high medical bills." In truth and in fact, POPE knew that CC-2, her goddaughter, did not suffer from any such illness.

37. On or about September 25, 2017, POPE's supervisor at JSRCC, T.H., confronted POPE about financial aid amounts disbursed to CC-2, asking directly about whether POPE had any relation with that student. POPE falsely stated that she had no relation to CC-2. T.H. requested a copy of the SAP documentation in CC-2's file.

38. That same day, on September 25, 2017, five documents were scanned into the JSRCC financial aid system for the first time, including SAP Appeals and SAP contracts for

11

CC-2 covering financial aid semester in 2015 through 2017. Uploaded documents included a forged medical report from Virginia Commonwealth University (VCU) Health Systems, dated on March 16, 2015, purporting to show that CC-2 was a cancer patient.

39. Records from VCU Health Systems reflect that: 1) CC-2 was never a cancer patient there; and 2) the medical documentation submitted as part of CC-2's SAP appeal was CC-2's name and date of birth superimposed on the medical documentation of a different JSRCC financial aid recipient, A.P., from November 4, 2014. A.P. had previously submitted this medical document as part of a SAP appeal to JSRCC, and POPE had access to A.P.'s medical document via JSRCC financial aid systems.

40. POPE forged this VCU medical report to justify JSRCC providing continued financial aid to CC-2, notwithstanding CC-2's lack of eligibility. Moreover, POPE knew that CC-2, her goddaughter, did not suffer from cancer.

41. On or about October 3, 2017, POPE's supervisor at JSRCC, T.H., confronted POPE about financial aid amounts disbursed to CC-2. T.H. asked POPE directly whether she had any relation with CC-2. POPE falsely stated that she had no relation. POPE's lies were designed to conceal POPE's improper use of Student Aid funds.

42. On or about October 4, 2017, POPE did not show up to work and on or about October 5, 2017, POPE informed JSRCC that she was resigning from her position effective the same day.

43. On or about May 25, 2021, in a telephone conversation with CC-2, where CC-2 discussed being confronted by law enforcement about PayPal financial payments CC-2 made to POPE, POPE advised CC-2 to falsely tell law enforcement that the payments were for "money I

loaned you and you were paying me back." In truth and in fact, such payments were portions of Student Aid refund checks to CC-2.

### CC-3

44. CC-3 received approximately $79,906 in refund disbursements from JSRCC, consisting of Title IV and Virginia Aid, on or about February 11, 2011, continuing through on or about February 18, 2015. CC-3 predominantly received refund disbursements in the form of paper checks, which were predominantly cashed at Walmart Stores and deposited into Bank of America account ending in *4305.

45. Between in or about 2011, and continuing through in or about October 2013, CC-3 and his minor-aged children resided with POPE. CC-3 and POPE were, at the time, in a romantic relationship. CC-3 served a term of imprisonment in the Sussex County Jail from on or about July 11, 2012, through on or about September 10, 2012. POPE agreed to assist CC-3 with improperly obtaining Student Aid at JSRCC, encompassing semesters in which CC-3 would be in prison and not attending classes. CC-3 and POPE agreed that such Student Aid would be given to POPE to help cover the costs of CC-3's minor-aged children while CC-3 was in prison.

46. For instance, on July 11, 2012, the day that CC-3 was incarcerated, POPE manipulated the JSRCC financial aid system to give CC-3 an additional $3,050 in Title IV Aid for the Summer 2012 term, spanning from approximately May 21, 2012, continuing through July 30, 2012, and consisting of over two weeks of overlap with CC-3's prison sentence. POPE's actions caused JSRCC to disburse an additional $3,020 in Title IV Aid to CC-3 on July 17, 2012.

### CC-4

47. CC-4 received approximately $60,820 in refund disbursements from JSRCC, consisting of Title IV and Virginia Aid, on or about February 9, 2013, continuing through on or

about February 23, 2018. On or about February 9, 2013, continuing through on or about June 17, 2015, CC-4 received refund disbursements in the form of paper checks, which were predominantly cashed at Walmart Stores. On or about September 25, 2015, continuing through February 23, 2018, JSRCC refund disbursements were direct deposited in CC-4's USAA account ending in *2815.

48. CC-4 was not eligible to receive financial aid after failing to meet SAP requirements after the Summer 2015 term. Even though CC-4 did not submit any SAP Appeal in 2015 through 2017, POPE improperly placed CC-4 on SAP probationary status. During this timeframe, POPE made notes in CC-4's student file indicating that SAP appeals were approved for this student and that the student was meeting the terms of a remedial SAP contract; however, CC-4 did not submit any such SAP appeals or sign any SAP contracts during this period. As a result, CC-4 continued to receive JSRCC refund disbursements despite not being eligible. Moreover, on numerous occasions during this time period, POPE made manual entries into the JSRCC financial aid system to inflate CC-4's financial aid disbursement amounts.

49. Around the time of CC-4's receipt of refund disbursements, CC-4 made payments to POPE at POPE's direction, including but not limited to the transactions shown below:

| Approximate Date | Description |
|---|---|
| September 25, 2015 | JSRCC wired $1000.00 into CC-4's USAA bank account ending in *2815 for Student Aid refund disbursements. |
| September 29, 2015 | JSRCC wired $1,408.49 into CC-4's USAA bank account ending in *2815 for Student Aid refund disbursements. |
| September 29, 2015 | CC-4 withdrew $600.00 at a PNC Bank ATM in Petersburg, Virginia, which she paid to POPE. |
| September 30, 2015 | JSRCC wired $1,444.00 into CC-4's USAA bank account ending in *2815 for Student Aid refund disbursements. |

| Approximate Date | Description |
|---|---|
| October 2, 2015 | CC-4 withdrew $700.00 at a PNC Bank ATMs in Petersburg, Virginia and Hopewell, Virginia, both within the Eastern District of Virginia, which she paid to POPE. |
| February 19, 2016 | JSRCC wired $1,240.15 into CC-4's USAA bank account ending in *2815 for Student Aid refund disbursements. |
| February 22, 2016 | JSRCC wired $1,500 into CC-4's USAA bank account ending in *2815 for Student Aid refund disbursements. |
| February 23, 2016 | JSRCC wired $1,680.60 into CC-4's USAA bank account ending in *2815 for Student Aid refund disbursements. |
| February 23, 2016 | CC-4 withdrew $2,100.00 from a PNC Bank ATM in Petersburg, Virginia, within the Eastern District of Virginia, over four transactions. CC-4 paid this money to POPE. |
| June 21, 2016 | JSRCC wired $3,444.00 into CC-4's USAA bank account ending in *2815 for Student Aid refund disbursements. |
| June 21, 2016 | JSRCC wired $935.00 into CC-4's USAA bank account ending in *2815 for Student Aid refund disbursements. |

50. On or about October 3, 2017, POPE's supervisor at JSRCC, T.H., confronted POPE about financial aid amounts disbursed to co-conspirator CC-4. T.H. asked POPE directly whether she had any relation with CC-4. POPE falsely stated that she had no relation when, in truth, CC-4 is POPE's cousin. POPE's lies were designed to conceal POPE's improper use of Student Aid funds.

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

51. Paragraphs 1 through 50, including all subparagraphs, of this Indictment are incorporated by reference as if fully set forth here.

52. KIESHA LASHAWN POPE, beginning at a time unknown, but no later than in or about 2010, and continuing through in or about March 2021, in Eastern District of Virginia, did knowingly and intentionally combine, conspire, confederate, and agree with individuals, both known and unknown, to commit offenses against the United States, to wit:

53. Beginning prior to in or about 2010, and continuing through on or May 25, 2021, the exact dates being unknown, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, defendant KIESHA LASHAWN POPE unlawfully and knowingly conspired with CC-1, CC-2, CC-3, CC-4, and with others, known and unknown to the Grand Jury, to commit the offense of wire fraud, that is: to knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud, transmitted and caused transmission of writings, signs, and signals in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

54. The Grand Jury realleges and incorporates by reference paragraph 17 of this Indictment as a description of the purpose of the conspiracy.

### Manner and Means of the Conspiracy

55. The Grand Jury realleges and incorporates by reference paragraphs 18 through 25 including all subparagraphs, of this Indictment as a description of the manner and means of the conspiracy.

(All in violation of Title 18, United States Code, Section 1349.)

### COUNTS TWO THROUGH FOUR
(Wire Fraud)

56. Paragraphs 1 through 55, including all subparagraphs, of this Indictment are incorporated by reference as if fully set forth here.

57. On or about the following dates, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, for the purpose of executing and attempting to

execute the scheme and artifice to defraud, defendant KIESHA LASHAWN POPE caused to be sent, transmitted, and delivered in interstate and foreign commerce via wire communication the signs, signals, and writings set forth below for each count, each transmission constituting a separate count:

| Count | On or About Date | Description |
|---|---|---|
| 2 | June 21, 2017 | Pope initiated an interstate wiring of $398.67 from the refund disbursement prepaid card of CC-1, a Visa card ending in 0671 with servers located in Sioux Falls, South Dakota, to Colonial Honda, in the Eastern District of Virginia, for repairs to POPE's automobile. |
| 3 | October 5, 2017 | Pope initiated an interstate wiring of $15.00 from the refund check debit card of CC-1, a Visa card ending in 0671 with servers located in Sioux Falls, South Dakota, to MySchoolBucks.com, for food expenses of her minor aged daughter, J.P., at Chesterfield County Public Schools. The transaction caused an electronic receipt to be sent to POPE's business email address at JSRCC in the Eastern District of Virginia. |
| 4 | November 2, 2017 | Pope initiated an interstate wiring of $20.00 from the refund check debit card of CC-1, a Visa card ending in 0671 with servers located in Sioux Falls, South Dakota, to MySchoolBucks.com, for food expenses of her minor aged daughter, J.P., at Chesterfield County Public Schools. The transaction caused an electronic receipt to be sent to POPE's business email address at JSRCC in the Eastern District of Virginia. |

(All in violation of Title 18, United States Code, Section 1343.)

### COUNT FIVE
(Aggravated Identity Theft)

58. Paragraphs 1 through 57, including all subparagraphs, of this Indictment are incorporated by reference as if fully set forth here.

59. During the conspiracy and the scheme to defraud described above, on or about June 21, 2017, and continuing through on or about November 2, 2017, in the Eastern District of

Virginia and elsewhere, the defendant KIESHA LASHAWN POPE did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in 18 U.S.C. Section 1028A(c), to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person, K.G.:

| Count | On or About Date | Means of Identification | Description of Transaction | During and In Relation to Felony Violation |
|---|---|---|---|---|
| 5 | June 21, 2017, and continuing through November 2, 2017 | The name, prepaid Visa card ending in 0671, and the associated Visa card number of K.G., identified as CC-1 in the Indictment | Fraudulent charges to K.G.'s prepaid Visa card ending in 0671 to improperly take financial aid funds designated for K.G. for POPE's own benefit | Wire Fraud, in violation of 18 U.S.C. Section 1343 (*see* Counts 2 through 4) |

(In violation of Title 18, United States Code, Section 1028A(a)(1).)

## CRIMINAL FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendant is notified that, if convicted of the offenses alleged in Counts One through Four, she shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly as the result of such violations, including, but not limited to, any assets which may be directly forfeitable as proceeds or subject to forfeiture as a substitute asset.

[Continued on Next Page]

If property subject to forfeiture meets the requirements of 21 U.S.C. § 853(p), the government will seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c) and Title 21, United States Code, Section 853(p).)

A TRUE BILL:

_____
FOREPERSON

*Pursuant to the E-Government Act, the original of this page has been filed under seal in Clerk's Office*

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Avishek Panth
Assistant United States Attorney