IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:22-cr-00009-DJN |
| KIESHA LASHAWN POPE, | |
| Defendant. | |

## STATEMENT OF FACTS

The United States and the defendant, KIESHA LASHAWN POPE (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.      From on or about April 10, 2006, and continuing through on or about October 3, 2017, KIESHA LASHAWN POPE was the Director of Financial Aid at J. Sargent Reynolds Community College ("JSRCC"), a post-secondary, public community college servicing the greater Richmond, Virginia area, within the Eastern District of Virginia.   As the director, POPE managed a staff in the financial aid office responsible for dispersing federal funds provided to eligible enrolled students under the authority of Title IV of the Higher Education Act of 1965, as amended, as well as financial aid programs administered and funded by the Commonwealth of Virginia (together, "Student Aid"), to eligible enrolled students.

2.      POPE, beginning prior to in or about 2010, and continuing through on or about November 2017, the exact dates being unknown, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, did knowingly and intentionally combine, conspire, confederate, and agree with individuals listed in the indictment as CC-1, CC-2, CC-3, CC-4, and with others, to commit offenses against the United States; to wit, wire fraud, that is: to

1

knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud, transmitted and caused transmission of writings, signs, and signals in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

3.      The purpose of the scheme was for POPE and her co-conspirators, known and unknown, to unlawfully enrich themselves: 1) by fraudulently causing the U.S. Government, the Commonwealth of Virginia, and JSRCC to award Student Aid to co-conspirators who were not entitled to such Student Aid; 2) by manipulating JSRCC financial aid to improperly increase the financial aid eligibility of and disbursements to co-conspirators; 3) by concealing failures of co-conspirators to make satisfactory academic performance and concealing the lack of eligibility of such co-conspirators to continue to receive Student Aid; 4) by spending Student Aid on improper non-educational expenses for which Student Aid was not authorized; and 5) by concealing POPE's and her co-conspirators' improper use of Student Aid from the United States Government, the Commonwealth of Virginia, JSRCC personnel, and law enforcement officials.

### Manner and Means of the Conspiracy

4.      POPE agreed to procure Student Aid for her co-conspirators and to ensure their continued financial aid eligibility at JSRCC, even when POPE knew that such co-conspirators were not eligible for Student Aid.   Namely, POPE procured continued financial aid eligibility for co-conspirators, notwithstanding the failures of those students to submit Satisfactory Academic Progress ("SAP") appeals, and even when such individuals were not attending classes at JSRCC.

5.     POPE used her access to the JSRCC financial aid systems to inflate Student Aid eligibility for her co-conspirators.

6.     POPE caused at least $230,850 in Student Aid benefits to be disbursed to co-conspirators who were not eligible for continued financial aid.

7.     Co-conspirators paid a portion of the JSRCC refund disbursement, consisting of Student Aid, to POPE.   POPE spent portions of the Student Aid money she received on various personal expenses, including: 1) repairs for her personal vehicle; 2) a vacation on Disney Cruise Line; and 3) expenses for her minor-aged daughter, J.P.

8.     When POPE was confronted by T.H., her supervisor at JSRCC, about irregular amounts of financial aid disbursed to CC-1, CC-2, and CC-4, POPE lied to T.H., stating that she had no relationship with these individuals.   In fact, CC-1 was POPE's son, CC-2 was POPE's goddaughter, and CC-4 was POPE's cousin.

9.     Pope, while in the Richmond metropolitan area, initiated a Visa debit card transaction involving refund check proceeds that utilized Visa's servers (located in South Dakota).   POPE transferred the refund check proceeds from the Visa debit card ending in 0671 to MySchoolBucks.com for food expenses of her minor aged daughter, J.P., at Chesterfield County Public Schools, generating an electronic receipt sent from Visa's servers to Pope's email address at JSRCC.

CC-1

10.     CC-1 did not attend any class at JSRCC between in or about 2011 to in or about 2017, but received JSRCC financial aid during this period.

11.     CC-1 had an agreement with POPE wherein POPE would continue to enroll CC-1 at JSRCC; once CC-1 received refund disbursement checks, CC-1 would cash the checks and give POPE a portion of the funds.

12.     In or about 2011, and continuing through in or about 2014, CC-1 cashed checks from JSRCC consisting of Student Aid refund disbursements and gave a portion of the funds to POPE.   Thereafter, from in or about 2015, and continuing through in or about 2017, POPE instead directly received a prepaid debit card (Visa card ending in 0671) in the name of CC-1 at POPE's home address in the Eastern District of Virginia.   This card's pre-loaded proceeds consisted of Student Aid refund disbursements to be used exclusively for the education expenses of CC-1.   POPE improperly spent the card funds on her own expenses.

13.     CC-1 was automatically placed on a financial aid suspension at JSRCC after the Spring 2013 term due to CC-1's failure to meet SAP requirements.   Thereafter, POPE improperly placed CC-1 on SAP probationary status.   As a result, CC-1 continued to receive financial aid.   Moreover, on numerous occasions, POPE made manual entries into the JSRCC financial aid system to inflate CC-1's financial aid disbursement amounts.

14.     From in or about 2011, and continuing through in or about 2017, POPE's actions caused $137,004.20 in losses to the United States Department of Education, Commonwealth of Virginia, and JSRCC associated with CC-1.

CC-2

15.     Between in or about 2013, and continuing through in or about 2017, CC-2 received financial aid from JSRCC.   CC-2 was automatically placed on a financial aid suspension after the Spring 2015 term due to CC-2's failure to meet SAP requirements. Thereafter, POPE improperly placed CC-2 on SAP probationary status.   As a result, CC-2

4

continued to receive JSRCC financial aid.   Moreover, POPE made numerous manual entries into the JSRCC financial aid system to inflate CC-2's financial aid disbursement amounts.

16.     CC-2 sent POPE roughly half of the Student Aid refund disbursements received from JSRCC, usually within a week of receiving the Student Aid from JSRCC.

17.     On or about September 25, 2017, POPE forged a medical report from Virginia Commonwealth University (VCU) Health Systems, dated March 16, 2015, which purported to show that CC-2 was a cancer patient at VCU.   POPE affixed this forged medical report to an SAP appeal that POPE forged on behalf of CC-2 to justify JSRCC providing continued financial aid to CC-2, notwithstanding CC-2's lack of legitimate financial aid eligibility.   POPE submitted this SAP appeal package in the name of CC-2 to POPE's supervisor, T.H., on or around September 25, 2017.

18.     From in or about 2015, and continuing through in or about 2017, POPE's actions caused $20,471.30 in losses to the United States Department of Education, Commonwealth of Virginia, and JSRCC associated with CC-2.

CC-3

19.     CC-3 is POPE's ex-fiancé.   Between in or about 2011, and continuing through in or about October 2013, CC-3 and his minor-aged children resided with POPE.   CC-3 served a term of imprisonment in the Sussex County Jail from on or about July 11, 2012, through on or about September 10, 2012.   POPE agreed to assist CC-3 with improperly obtaining Student Aid at JSRCC, encompassing semesters during which CC-3 would be in prison and not attending classes at JSRCC.   CC-3 and POPE agreed that such Student Aid would be given to POPE to help cover the costs of CC-3's minor-aged children while CC-3 was in prison.

20.     For instance, on July 11, 2012, the day that CC-3 was incarcerated, POPE manipulated the JSRCC financial aid system to give CC-3 an additional Title IV Aid for the Summer 2012 term, spanning from approximately May 21, 2012 through July 30, 2012.   CC-3 did not attend classes at JSRCC during this time period, and, in fact, was incarcerated for a two-week period during that Summer 2012 term.   POPE's actions caused JSRCC to disburse an additional $3,020 in Title IV Aid to CC-3 on July 17, 2012.

21.     From in or about 2011, and continuing through in or about 2013, POPE's actions caused $31,125.40 in losses to the United States Department of Education, Commonwealth of Virginia, and JSRCC associated with CC-3.

CC-4

22.     Between in or about 2012, and continuing through in or about 2017, CC-4 received financial aid from JSRCC.   CC-4 was not eligible to receive continued JSRCC financial aid after failing to meet SAP requirements after the Summer 2015 term.   Even though CC-4 did not submit SAP appeals in 2015 through 2017, POPE improperly placed CC-4 on SAP probationary status.   As a result, CC-4 continued to receive JSRCC refund disbursements despite not being eligible for those funds.   Moreover, on numerous occasions, POPE made manual entries into the JSRCC financial aid system to inflate CC-4's financial aid disbursement amounts.

23.     CC-4 made payments to POPE that consisted of portions of the Student Aid that CC-4 had received from JSRCC as a result of POPE's aforementioned fraudulent actions.

24.     From in or about 2015, and continuing through in or about 2017, POPE's actions caused $42,249.10 in losses to the United States Department of Education, Commonwealth of Virginia, and JSRCC associated with CC-4.

\* \* \*

25.    This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States.   It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

26.    The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date:   March 16, 2022          By:   _____

Avishek Panth
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, KIESHA LASHAWN POPE, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

KIESHA LASHAWN POPE

I am Frederick M. Schick, defendant's attorney.   I have carefully reviewed the above Statement of Facts with him.   To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Frederick M. Schick
Attorney for KIESHA LASHAWN POPE

8